IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | CRIMINAL NO.  09-0242-WS |
| ) | |
| DHS, INC. d.b.a. ROTO ROOTER, ) | |
| DONALD GREGORY SMITH, and ) | |
| WILLIAM L. WILMOTH, SR., ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

This matter is before the Court on the government's amended motion in limine. (Doc. 42).[1] The motion seeks the exclusion of evidence and argument that the defendants' alleged illegal grease dumping did not harm the environment or the Mobile Area Water and Sewer System ("MAWSS") and that any operational problems at MAWSS have other causes. (*Id*. at 1).[2] The motion also seeks the exclusion of evidence and argument that the defendants did not profit from the charged conduct. (*Id*.). The parties have filed briefs in support of their respective positions, (Docs. 42, 44, 47, 53), and the motion is ripe for resolution.

**I. Evidence of No Harm to MAWSS from the Defendants' Discharges.**

According to the government, the defendants intend to offer evidence that their discharges of grease did not cause sewage system overflows experienced by MAWSS. (Doc. 42 at 2). The government argues that evidence of harm to MAWSS — including

---

[1]This motion supersedes the original, (Doc. 37), which is **denied as moot**.

[2]The grease came from restaurants and other customers of the corporate defendant, who paid it to remove grease from their containment devices (installed to prevent the grease from entering the MAWSS system) and dispose of it legally.  Instead, the indictment charges, the defendants illegally dumped the grease directly into the MAWSS system.

in the form of obstruction to its system or interference with its treatment processes and operations — is not an element in any prosecution involving any provision of the Clean Water Act and that evidence of the absence of such harm is therefore irrelevant.  (Doc. 42 at 3-4; Doc. 47 at 4).  None of the government's authorities involves violations of 40 C.F.R. § 403.5(b)(3), which prohibits the introduction of solid or viscous pollutants "*in amounts which will cause obstruction* to the flow in the POTW [publicly owned treatment works] *resulting in Interference*" (emphasis added).  "Interference" is a discharge which, alone or in conjunction with other discharges, inhibits or disrupts the POTW, its treatment processes or operations and thereby causes a violation of certain statutory provisions, regulations or permits governing the POTW.  40 C.F.R. § 403.3(k).[3]

Count One charges the defendants with conspiracy under 18 U.S.C. § 371.  That statute makes it illegal to conspire "to commit any offense against the United States," *id*., and it "requires reference in the indictment to other criminal statutes that define the object of the conspiracy."  *United States v. Harmas*, 974 F.2d 1262, 1266 n.5 (11th Cir. 1992).  Among the "laws the defendants conspired to violate," the indictment lists Section 403.5(b)(3).  (Doc. 1, ¶ 17.b).  Indeed, the indictment expressly charges that the defendants conspired "[t]o introduce and discharge into a publicly owned wastewater treatment system viscous pollutants, specifically oil and grease, *in amounts that will cause obstruction* to the flow of wastewater in the treatment system *resulting in a significant disruption* of its operations and treatment processes, in violation of 40 C.F.R. 403.5(b)(3) and 40 C.F.R. 403.3(k) and thus in violation of Title 33, U.S.C. Section 1319(c)(2)(A) ...."  (*Id.* (emphasis added)).

By these allegations the government explicitly charges the defendants, not simply with conspiring to introduce grease into the MAWSS system, but with conspiring to violate Section 403.5(b)(3) by introducing grease in amounts that will cause obstruction to the flow in the system and result in interference with the system's operations and

---

[3]A violation of Section 403.5(b)(3) is a violation of 33 U.S.C. § 1319(c)(2)(A).

treatment processes.

A defendant would naturally defend a charged substantive violation of Section 403.5(b)(3) by attempting to show that the amount introduced into the system did not obstruct water flow or that, if it did, it did not cause or contribute to a disruption of the system resulting in a statutory, regulatory or permit violation (that is, did not result in "interference"). Similarly, in a conspiracy case, evidence that the amount of grease actually introduced — due to the quantity of grease, the circumstances under which it was introduced (e.g., widely dispersed), or other factors — did not obstruct water flow, or did not thereby disrupt system operations or treatment processes, would appear relevant to whether the defendants *conspired* to introduce an amount that will cause obstruction resulting in interference.[4] That is the defendants' position, it appears reasonable, and the government in its reply does not address it. The motion in limine in this respect is thus due to be denied.

## II.  Other Causes of Harm to MAWSS.

According to the government, the defendants intend to offer evidence that the sewage system overflows experienced by MAWSS stemmed from causes other than the defendants' discharges. (Doc. 42 at 2). The government again says such evidence is irrelevant.

It does not appear that the government intends to introduce evidence that the defendants' discharges caused any particular overflows. (Doc. 42 at 3; Doc. 47 at 4). The government does, however, intend to introduce evidence that grease predictably causes obstructions of water flow that predictably result in overflows. (Doc. 45, Exhibit B at 1-2). Why the government needs this evidence is unclear but, once it is introduced, it

---

[4]The strength of this inference would of course depend upon the evidence. For example, evidence that the amount introduced was exponentially too small to reach the necessary threshold would be more persuasive than evidence that the amount introduced was only marginally below the threshold.

will permit the jury to infer that the defendants' discharges likewise caused overflows. Because overflows presumably constitute interference with MAWSS' operations or treatment processes, that inference would strengthen the evidence that the defendants violated Section 403.5(b)(3) and thereby strengthen the evidence that the defendants conspired to violate that section. As discussed in Part I, evidence relevant to show the unlikelihood or impossibility of a substantive violation appears relevant to whether the defendants conspired to commit a substantive violation. Therefore, evidence that the overflows stemmed from other causes would be relevant to counter the government's evidence. Accordingly, the motion in limine in this respect is due to be denied.[5]

### III. Evidence of Harm to the Environment.

It does not appear from the parties' briefs that the defendants intend to offer evidence that their discharges did not harm the environment. To the extent they intend to do so, they have failed to show any basis for concluding that such evidence is relevant. Accordingly, the motion in limine in this respect is due to be granted.

### IV. Evidence of Profit.

According to the government, the defendants intend to offer evidence that they made no profit from their alleged scheme. (Doc. 42 at 5). The government argues that such evidence is irrelevant. In response, the defendants "agree[d] with the government in its motion that whether any individual made money by the unlawful conduct ought not be relevant to the factual issues at trial." (Doc. 44 at 6). However, the defendants claim that the indictment in four places alleges that the defendants actually profited from the

---

[5]It appears the defendants intend to introduce evidence that other causes were completely responsible for the overflows. Were they to offer evidence merely that other causes combined with their discharges to produce the overflows, the admissibility issue might be resolved differently, since "interference" includes a discharge that operates "in conjunction with other discharges." 40 C.F.R. § 403.3(k).

scheme, thereby placing actual profit at issue.

Two of these paragraphs in fact allege only the existence of a financial objective (saving the cost of legally dumping the grease) sought to be furthered by the scheme. (Doc. 1, ¶¶ 18, 21). A third alleges only that the corporate defendant received over $2 million from MAWSS under a series of contracts to clean and video MAWSS' sewer lines; it does not allege that the defendants' illegal dumping profited them under these contracts. (*Id*. at 11, Overt Act 47).

The fourth paragraph, however, alleges that, "[i]n both capacities, Defendant DHS, Inc. profited, first by billing its customers for the legal disposal of the grease that it illegally discharged into MAWSS' sewer lines and then by getting paid by MAWSS to remove it." (Doc. 1, ¶ 26). This is an explicit allegation of actual profit. The government concedes the point, and it moves to strike the offending sentence from the indictment. (Doc. 47 at 1, 4).

The defendants respond with an interesting objection. They quote Rule 7(d), which provides that, "[u]pon a defendant's motion, the court may strike surplusage from the indictment or information," and they assert they have filed no such motion. (Doc. 53 at 2).

The objection is interesting because it overlooks the defendants' own first brief, in which they not only "agree[d]" that actual profit is irrelevant but insisted that, "[i]f profit is irrelevant to the government's case in chief, these sections of the indictment should be stricken." (Doc. 44 at 7). This is, in substance, a motion to strike under Rule 7(d), and it is the substance that matters. For example, where the trial judge asked defense counsel if he was agreeable to the judge striking out several words from the indictment and counsel responded in the affirmative, the old Fifth Circuit held that, "[i]n substance," the judge had acted on a motion under Rule 7(d). *Marsh v. United States*, 344 F.2d 317, 320, 322 (5th Cir. 1965).

## CONCLUSION

The Court has considered the parties' motions without the benefit of any analysis or legal authority from the parties as to the meaning and scope of Sections 403.5(b)(3) and 403.3(k).  The analysis above, while the fruit of the Court's conscientious effort to address the limited presentation of the parties, should not be understood as a definitive treatment.  Based on the argument and authority presented, the government's motion in limine is **granted** with respect to profit and with respect to harm to the environment and **denied** in all other respects.  The government's motion to strike is **denied**.  The defendants' motion to strike is **granted** with respect to the quoted language in paragraph 26 and **denied as moot** in all other respects.

DONE and ORDERED this 14th day of May, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE
